Quentin M. Rhoades
State Bar No. 3969
RHOADES & ERICKSON PLLC
430 Ryman Street
Missoula, Montana 59802
Telephone: (406) 721-9700
courtdocs@montanalawyer.com

*Pro Querente*

## UNITED STATES DISTRICT COURT
## UNITED STATES DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **DESIREE BAKER,** Plaintiff, vs. **ALBERTON JOINT SCHOOL DISTRICT # 2** Defendant. | Case No.: **9:24-cv-00157** **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Desiree Baker ("Baker"), by and through counsel, states her First Amended Complaint against Defendant Alberton Joint School District #2 ("the School"), as follows:

1. This is an action against Alberton Joint School District #2 for its unlawful retaliation against Baker, a paraeducator and mandated reporter, when she reported suspected inappropriate behavior founded either in sexual harassment,

1

sexual discrimination, or disability discrimination, by another teacher to school administration.

## PARTIES

2. Plaintiff Desiree Baker is a resident of Mineral County, Montana.

3. Alberton Joint School District #2 is a public school district in Mineral County, Montana. It consists of one school building which houses grades K-12. It is governed by a board of trustees.

## JURISDICTION AND VENUE

4. Pursuant to Mont. Code Ann. §§ 49-2-301 and 49-2-501, Baker brought a claim against Defendant Alberton Joint School District #2 with the Montana Human Rights Bureau and has exhausted her administrative remedies. As such, this case is ripe for filing within the district court.

5. At all times relevant to this action, the acts and accrual of actions founding the bases for this Complaint occurred within Mineral County, Montana.

6. This Court, as a court of general jurisdiction, has full authority to enter a final judgment in this civil action.

7. Venue is proper before this Court because the conduct at issue occurred within Mineral County, Montana, Plaintiff was employed by Alberton

Joint School District #2, and Alberton Joint School District #2 is a public school district within Mineral County, Montana.

## GENERAL ALLEGATIONS

8.      Baker, within the scope of her employment as a paraeducator at the School, reported suspected inappropriate behavior by another teacher to Jeff Crews ("Crews"), former Superintendent of Alberton School District #2, on multiple occasions. Baker suspected this inappropriate behavior was founded either in sexual harassment, sexual discrimination, or disability discrimination.  Baker knew she was a "mandatory reporter," but the School never trained her on the subject or offered her written material on how to comply with the requirements of a mandatory reporter.

9.      On or about February 21, 2023, Baker first reported to Crews what she believed was inappropriate behavior by Erin Bloom ("Bloom").  Earlier that day, female special education students disclosed to Baker that they felt uncomfortable when Bloom escorted them to the shower because she would stand directly outside the shower while the students showered.  One student further disclosed that when Baker took her to shower, she "didn't have to worr[y], that someone was standing nearby."

10. Baker made multiple attempts to report Bloom's inappropriate behavior to Crews and Chris Whiteman ("Whiteman"), Principal of Alberton Joint School District #2, to no avail. As a result of Crews' and Whiteman's apparent refusal to investigate the situation, Baker reported Bloom's behavior to Alberton Joint School District #2 Board Member, Nicole Henry ("Henry").

11. Henry filed a formal grievance with the School Board on March 5, 2023, requesting a formal investigation into Bloom as the School's administration seemed to ignore the concerns of parents and staff around this issue.

12. On or about March 6, 2023, Crews called a meeting with Whiteman and Baker during which he accused Baker of making a false report regarding Bloom's suspected inappropriate behavior with her students.

13. On or about March 7, 2023, Baker filed a formal grievance against Bloom with Whiteman and Crews that acknowledged her duties as a mandated reporter and requested an investigation into Bloom's behavior with students via email.

14. On or about March 8, 2023, Baker reported Bloom's and Crews' behavior to the School Board via email. Within this email, she provided a detailed timeline of events that occurred on March 6, 2023, that included her description of the meeting with Whiteman and Crews.

15. On or about March 9, 2023, Baker filed a formal grievance against the School, Bloom, and Crews. In her grievance, she provided a detailed timeline of events that transpired that morning before she was placed on administrative leave and escorted from the building.

16. On the same day, Crews notified Baker that she was being placed on "administrative leave with pay pending an investigation into that [she] violated state and federal law regarding student and staff confidentiality, submitted a false complaint, and violated Montana's mandatory reporting laws." In addition, she was told she was not permitted on school property for the duration of the investigation and that she must be available to meet with the investigator during her normal work hours.

17. On or about March 12, 2023, Elizabeth Kaleva ("Kaleva"), counsel for the Alberton Joint School District #2, contacted Baker via text message requesting to meet with her. In response, Baker informed Kaleva that she wanted to meet with legal counsel prior to meeting with Kaleva.

18. Less than fifteen minutes later, Crews informed Baker, via text message, that her "administrative leave with pay" was immediately being escalated to "administrative leave without pay" due to her "direct insubordination" and "refusal" to meet with Kaleva at the time Kaleva requested. The text message

stated, "I was just informed by Bea that you are not willing to meet with Bea for the purpose of conducting an investigation. I am putting you on leave without pay effective immediately until you meet with her."

19.     In a letter dated April 24, 2023, the School retaliated against Baker for a final time as her administrative leave was escalated from "administrative leave without pay" to termination. Crews justified Baker's termination on the findings of the investigation and her apparent "direct insubordination." Specifically, he stated that while it was determined that Baker did not file a false complaint, she violated the "employee's right of privacy" and was "directly insubordinate by refusing to meet with the investigator" until after she met with legal counsel.

## COUNT I

### Unlawful Retaliation

20.     Plaintiff realleges all prior allegations as if set forth herein.

21.     Montana law prohibits retaliation by a public employer against anyone for engaging in a protected activity as "[i]t is unlawful for a …public employee to retaliate against, or condone or threaten retaliation against, an individual, who, in good faith, alleges waste, fraud, or abuse." Mont Code Ann. § 2-2-145. Further, Mont. Code Ann. § 49-2-301 states: "It is an unlawful discriminatory practice for a[n]…educational institution …to discharge, expel, blacklist, or otherwise

discriminate against an individual because the individual has opposed any practices forbidden under this chapter or because the individual has filed a complaint, testified, assisted, or participated in any manner in an investigation or proceeding under this chapter."

22.  The School unlawfully retaliated against Baker.  To establish a prima facie case of retaliation, in violation of Mont. Code Ann. §§ 2-2-145 and 49-2-301, Baker need only show that:

   a.  Baker opposed or participated in a protected activity;

   b.  The School took an adverse action against Baker subsequent to her participation in the protected activity; and

   c.  There is a causal connection between the protected activity and the adverse action.

23.  In this case, the School unlawfully retaliated against Baker for her reporting of Bloom's inappropriate behavior with the School's special education students.  Baker, honoring her duty as a mandatory reporter as required by Mont. Code Ann. § 41-3-201, participated in a protected activity when she reported activity that could be, if proven to be true, evidence of sexual harassment, sexual discrimination, or discrimination based on disability.  Due to Crews and Whiteman's apparent refusal to investigate the situation—evidenced by their

complete inaction after Baker initially reported her concerns to them on February 21, 2023—Baker reported Bloom's suspected inappropriate behavior to School Board Member Henry.

24. In a direct response to Baker's formal complaint, the School subjected Baker to an adverse employment action by immediately placing her on "administrative leave with pay" on March 9, 2023. Baker was further retaliated against when the School escalated her administrative leave to one "without pay" after she sought legal counsel in the face of retaliation. The School retaliated against Baker once again when they escalated her "administrative leave without pay" to termination in a letter from Crews to Baker dated April 24, 2023.

25. There is a causal connection between the protected activity and the adverse action. Baker was escalated to "administrative leave with pay" for "direct insubordination" after Kaleva misconstrued and communicated to Crews that Baker was refusing to meet with her when Baker informed Kaleva she was seeking the advice of legal counsel. Baker never refused to meet with Kaleva and was not "directly insubordinate." She complied with Kaleva's request for a meeting after she obtained legal advice.

26. There is further evidence of a causal connection as the School terminated Baker from her position as a paraeducator citing her "direct

insubordination" for seeking legal counsel in the face of retaliation and findings of the investigation as justification for her termination.

27.     Baker suffered damages as a direct result of the retaliation, in an amount to be proven at trial.

## REQUEST FOR RELIEF

Accordingly, Baker requests the Court enjoin the School from discriminating and retaliating against others like her at the School who might report suspicious and/or inappropriate behavior.  Further, Baker requests compensatory damages, including special damages for lost salary and benefits; general damages and attorney fees for infringement upon her duties as a mandatory reporter, humiliation, and emotional distress caused by the unlawful conduct of the School in a sum to be determined at trial, and for such other relief as the Court deems just.

DATED this ___ day of November 2024

Respectfully Submitted,
RHOADES & ERICKSON PLLC


By:_____
    Quentin M. Rhoades
    *Pro Querente*

9

## JURY DEMAND

Jury trial is demanded on all counts so triable.

DATED this 8th day of November 2024

Respectfully Submitted,
RHOADES & ERICKSON PLLC


By:_____
    Quentin M. Rhoades
    *Pro Querente*